UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SIMMY MARTIN                                                    PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 3:20CV439-KHJ-RPM

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION                                                 DEFENDANT

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Plaintiff Simmy Martin, Jr.'s complaint appealing the Commissioner of Social Security's (Commissioner) denial of his application for supplemental security income benefits under the Social Security Act (the Act). Martin filed the instant application on March 16, 2017, alleging a disability onset date of June 1, 2009, due to hearing loss, high blood pressure, vision problems, and problems with his foot. Doc. [15] at 19; Doc. [16] at 17, 340-45, 364. Martin was 47-years old at the alleged onset of disability and 55-years old on the date of he applied, with a high school education, and past relevant work experience as a sheet rock installer. Doc. [15] at 26. His claim was denied at the initial level and on reconsideration. Doc. [16] at 198-206, 244-50, 252-62. Martin requested and was granted a hearing before an Administrative Law Judge (ALJ). *Id.* at 288-93.

The ALJ conducted a hearing on August 13, 2019, where Martin was represented by an attorney. Doc. [16] at 229-43. On August 23, 2019, the ALJ issued a decision finding Martin not disabled. Doc. [15] at 19-27. The ALJ determined that Martin suffered from the severe impairment of hearing loss. *Id.* at 21. The ALJ also noted the presence of non-severe impairments related to high blood pressure and a gunshot wound to his left flank that occurred on August 27, 2017. The gunshot wound resulted in left posterior ilium and L2 spinous process

fractures and mild osteoarthritis of the hip. *Id.* at 22. Despite these impairments, the ALJ found that Martin retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with some additional limitations related to his hearing loss. *Id.* at 23. The ALJ concluded that Martin is unable to perform any past relevant work. *Id.* at 26. However, relying on the testimony of a vocational expert, the ALJ found there are jobs that exist in the national economy that Martin could still perform. *Id.* at 26-27. Accordingly, he found that Martin is not disabled under the Act. *Id.* at 27.

The Appeals Council denied Martin's motion for review. *Id.* at 5-9. Martin then filed the instant complaint on July 2, 2020. Martin has filed a brief requesting that the Court reverse and remand the Commissioner's decision based on the following claims: (1) the ALJ failed to consider Martin's multilevel thoracic spondylosis condition; and (2) the ALJ failed to include a detailed function-by-function analysis of Martin's limitations. Doc. [18].

## Law and Analysis

### Standard of Review

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)).  The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).  "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'"  *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).  While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language.  *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5).  The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant

numbers in the national economy.  The burden then shifts back to the claimant to establish that

he cannot perform this alternative employment.  *Id.*

**Multilevel Thoracic Spondylosis**

Martin argues that the ALJ erred in failing to consider his multilevel thoracic spondylosis

condition.  This assertion relies on a single CT scan of the thoracic spine performed at the

University of Mississippi Medical Center (UMMC) on August 27, 2017.  Doc. [16] at 572.  The

CT scan revealed multilevel thoracic spondylosis with diffuse loss of bone mineral density.

Martin does not point to any other medical evidence diagnosing or discussing this condition.

Nevertheless, Martin argues that multilevel thoracic spondylosis constitutes an "impairment" that

should have been considered and discussed by the ALJ.  Martin further asserts that he suffers

back pain because of the multilevel thoracic spondylosis.

When Martin filed his application for disability on March 16, 2017, he did not list

multilevel thoracic spondylosis or back pain as a disabling condition.  *See* Doc. [16] at 364.

Approximately four months later, on August 27, 2017, Martin suffered a gunshot wound to the

left, lower flank and received treatment at UMMC.  *Id.* at 561.  On the day of the shooting,

Martin was "negative for back pain."  *Id.* at 562.  He exhibited normal muscle tone and normal

coordination.  *Id.* at 563.  He ambulated without difficulty.  *Id.* at 564.  CT scans were performed

on the day of the shooting.  *Id.* at 564-65, 572-77.  The scan of the lumbar spine revealed an

acute comminuted fracture of the posterior aspect of the right iliac wing in the region of the

gunshot wound.  *Id.* at 573-74.  He also exhibited an age indeterminate compression fracture of

the T12 vertebral body.  *Ibid.*  A CT scan of the thoracic spine revealed multilevel thoracic

spondylosis and diffuse loss of bone mineral density.  *Id.* at 564, 572.

At a follow-up examination on September 15, 2017, with the bullet still lodged in his posterior superior gluteal region, Martin reported "continued back pain" and "that the bullet is very irritating when he is sitting or lying down." *Id.* at 584. That same day, in an outpatient procedure, the bullet was removed. *Id.* at 585. On September 18, 2017, Dr. Michael Bookhardt, at the Spine Medical Center, examined Martin for low back pain related to the gunshot wound. Dr. Bookhardt noted normal gait, normal range of motion, very slightly tender lumbar spine area, and an entrance wound in Martin's lower back. *Id.* at 227. Dr. Bookhardt concluded that "this is a surgical management issue with a surgical disposition only." *Ibid.* He recommended follow-up with his surgeon, including any requests for narcotic or pain medication. *Ibid.* On September 28, 2017, two weeks after the bullet had been removed, Martin reported mild pain. *Id.* at 586. He displayed normal muscle tone and was "ambulating without difficulty." *Ibid.*

Other than the CT scan of August 27, 2017, Martin does not identify any medical opinion in the record discussing multilevel thoracic spondylosis. This condition was an incidental finding that medical providers only discovered because Martin sought medical care for a gunshot wound. He does not identify any medical opinion identifying any symptoms or limitations resulting from multilevel thoracic spondylosis. He does not point to any treating source opining that his back pain is caused by multilevel thoracic spondylosis. Simply put, Martin has failed in his burden to establish an impairment related to multilevel thoracic spondylosis. *See Heck v. Colvin*, 674 F.App'x 411, 414 (5th Cir. 2017).

The ALJ did consider Martin's testimony regarding back pain. Doc. [15] at 23. The ALJ discussed this back pain in the context of Martin's gunshot wound. *Id.* at 22-23. He identified any medical conditions related to the gunshot wound as "non-severe impairments". *Id.* at 22. Moreover, the ALJ relied on the opinion of James Strong, M.D., who concluded that Martin had

no exertional limitations. *Id.* at 25. The ALJ found that this opinion "is consistent with the record as a whole, which does not demonstrate the presence of any medically determinable impairments other than hearing loss that would cause more than a minimal limitation in the claimant's ability to perform workplace activities." *Ibid.* Although not specifically mentioned in the ALJ's decision, the medical records revealed that in September 2017 Martin was working part-time as a carpenter (Doc. [16] at 226); and on January 9, 2019, he reported being "very active" and walking 2 to 5 miles every day at a slow pace (Doc. [15] at 47). The medical records contain frequent reports of normal strength, gait, muscle tone, and back examinations. *See* Doc. [15] at 274, 319; Doc. [16] at 227, 482, 548-49, 552, 558, 562-63, 586. Based on the foregoing, the undesigned finds that the ALJ did not err in omitting multilevel thoracic spondylosis as a severe impairment.

**Function-by-Function Analysis**

Martin next argues that the ALJ erred in failing to conduct a detailed function-by-function analysis in the RFC assessment, which he asserts is required by Social Security Ruling 96-8p. Specifically, he asserts that the ALJ's conclusion that Martin can "work at all exertional levels" is vague and insufficient to satisfy SSR 96-8p. Doc. [18] at 9.

While SSR 96–8p requires the ALJ to consider all of Plaintiff's impairments on a function-by-function basis, the ALJ's RFC fully encompassed Martin's exertional limitations. The ALJ relied on the opinion of consulting physician James Strong, M.D., who completed a function-by-function RFC assessment and concluded that Martin had no exertional limitations. Doc. [15] at 25. In his RFC assessment, Dr. Strong considered Martin's exertional, postural, manipulative, visual, communicative, and environmental limitations. Doc. [16] at 485-92. He determined that there were no limitations other than with respect to Martin's ability to hear and

speak. *Id.* at 489. A physician's function-by-function RFC assessment constitutes substantial evidence supporting the ALJ's findings. *See Beck v. Barnhar*t, 205 F.App'x 207, 213-14 (5th Cir. 2006); *Onishea v. Barnhart*, 116 F.App'x 1, 2 (5th Cir. 2004); *Kinser v. Colvin*, 2014 WL 6973022, at *3 (N.D.Tex. Dec. 9, 2014); *Brown v. Astrue*, 2009 WL 64117, at *4 (N.D.Tex. Jan. 12, 2009); *Zeno v. Barnhart*, 2005 WL 58822, at *9 (E.D.Tex. Feb. 4, 2005). The ALJ gave significant weight to Dr. Strong's opinion and found it to be consistent with the record as a whole. Doc. [15] at 25. As noted by the ALJ, the medical records contained "generally unremarkable physical examinations." *Ibid.*; *see also* Doc. [15] at 274, 319; Doc. [16] at 227, 482, 548-49, 552, 558, 562-63, 586. The ALJ also considered Dr. Darrell Blaylock's opinion, who conducted complete physical examinations on February 17, 2012, and November 21, 2016. Doc. [16] at 535-37. The ALJ gave limited weight to Dr. Blaylock's opinion but pointed to Dr. Blaylock's overall conclusion that "[b]asically the physical examination has no glaring problems." Doc. [15] at 25; Doc. [16] at 537. A vocational assessment dated December 21, 2016, examined Martin's functional capacities and also found no exertional limitations. Doc. [16] at 371-73. Based on the foregoing, the undersigned finds Martin's argument to be without merit.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the Commissioner's decision be AFFIRMED.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically

identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 4th day of August 2021.


/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE